UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 2:25-cr-00017-JAW |
| | ) | |
| LYNEL MOULTRIE. | ) | |
| | ) | |

**ORDER ON GOVERNMENT'S MOTION IN LIMINE REGARDING POTENTIAL ENTRAPMENT DEFENSE**

The government has filed a motion in limine to prevent the defendant from asserting an entrapment defense at trial. After reviewing the law on the assertion of entrapment defenses, the court agrees that the record does not appear to establish the requisite elements for the assertion of an entrapment defense, but the court declines to make a definitive ruling because it does not know what evidence will be adduced at trial. Aside from confirming in this order the current state of the law of entrapment in the Court of Appeals for the First Circuit, the court defers ruling unless and until the issue is presented at trial.

**I.    PROCEDURAL BACKGROUND**

On February 5, 2025, a federal grand jury issued a three-count indictment of Lynel Moultrie, charging him with three instances of distribution of a controlled substance, namely cocaine, in violation of 21 U.S.C. § 841(b)(1)(C). *Indictment* (ECF No. 40). This case is scheduled for trial to commence on Thursday, March 12, 2026 through Friday, March 13, 2026. A jury was selected on March 2, 2026. *Min. Entry* (ECF No. 124).

On February 20, 2026, the Government filed a motion in limine seeking to prohibit the Defendant from mounting an entrapment defense. *Gov't's Mot. in Lim. Regarding Potential Entrapment Defense* (ECF No. 106) (*Gov't's Mot.*). On March 3, 2026 the Defendant filed his opposition. *Def.'s Opp'n to Gov't's Mot. in Lim. as to Entrapment* (ECF No. 129) (*Def.'s Opp'n*). Later that day, the Government filed for leave to file a reply, *Mot. for Leave to File Reply to Def.'s Opp'n to Gov't's Mot. in Lim. Regarding Potential Entrapment Defense* (ECF No. 130), which the Court granted. *Order* (ECF No. 131). The Government filed the permitted reply on March 4, 2026. *Reply to Def.'s Opp'n to Gov't's Mot. in Lim. Regarding Potential Entrapment Defense* (ECF No. 132) (*Gov't's Reply*).

## II.   THE PARTIES' POSITIONS

### A.   The Government's Motion

The Government moves in limine to preclude the Defendant from mounting an entrapment defense and thus seeks to exclude testimony, argument, or references to entrapment at any phase of trial, as well as prevent an instruction on entrapment going to the jury. *Gov't's Mot.* at 1. According to the Government, the Defendant has not met his threshold burden and thus should not be allowed to mount the defense.

### B.   The Defendant's Opposition

The Defendant disagrees and argues that no rule or authority requires the Defendant to make a satisfactory prima facie showing before introducing evidence or arguing that he was entrapped. *Def.'s Opp'n* at 1. The Defendant argues the Sixth Amendment "requires the Government to prove its case beyond a reasonable doubt, which includes disproving entrapment." *Id.* at 2. The Defendant considers the

Government's request to be something like requiring a "dry-run" trial before the trial, which "[t]he Government is not entitled to," and further, "if there is insufficient evidence of entrapment, then an entrapment instruction will not be given." *Id.* at 3.

The Defendant also argues that he lacks information about the confidential informant (CI), who introduced the Defendant to the UC, and as such, exculpatory information may come to light: the Government may have been "'conned' by their confidential informant—a criminal who was trying to get out of more serious criminal offense." *Id.* at 2.

### C. The Government's Reply

Citing caselaw from the First, Seventh, Ninth, and Eleventh Circuits, the Government argues that "pretrial motions seeking to preclude entrapment defenses are now common in federal courts." *Gov't's Reply* at 1-2.

As to the confidential informant, the Government argues the Defendant seemingly suggests that more information may reveal that the CI induced the Defendant. *Id.* at 2. According to the Government, not only has the Defendant failed to support the speculative possibility that the CI induced the Defendant, even if the Defendant could produce requisite showing of inducement, he must also provide a requisite showing of his lack of predisposition. *Id.* at 3. Because the Defendant has provided neither inducement nor lack of predisposition evidence, he cannot argue an entrapment defense. *Id.*

### III. LEGAL STANDARD

To present an entrapment defense, a defendant must meet the burden of production as to the two elements comprising the entrapment defense: "(1)

3

government inducement of the accused to engage in criminal conduct, and (2) the accused's lack of predisposition to engage in such conduct." *United States v. Sanchez–Berrios,* 424 F.3d 65, 76 (1st Cir. 2005) (quoting *United States v. Rodriguez,* 858 F.2d 809, 812 (1st Cir. 1988)). Only when the defendant has satisfied his "entry-level burden of production as to both elements," does the burden shift to the government to prove beyond a reasonable doubt that no entrapment occurred. *Id.*; *see also United States v. Joost*, 92 F.3d 7, 12 (1st Cir. 1996) ("In order to be entitled to an entrapment instruction, the Defendant has the burden of producing some evidence on both elements sufficient to raise a reasonable doubt as to whether he was an 'unwary innocent' rather than a 'unwary criminal'") (cleaned up). Moreover, the defendant is entitled to a jury instruction on his entrapment defense only if he carries this entry-level burden. *Id.*

At the same time, the First Circuit described as "modest" the defendant's burden of production on the two prongs of the defense. *United States v. Pérez-Rodríguez*, 13 F.4th 1, 18 (1st Cir. 2021) (citing *Rodriguez*, 858 F.2d at 814). The First Circuit wrote that this rule "is in keeping with the 'general proposition [that] a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor.'" *Id.* at 18-19 (quoting *Mathews v. United States*, 485 U.S. 58, 63 (1988)). Moreover, in analyzing whether a defendant has met his burden, "the court must construe the evidence in the light most favorable to the defendant." *Id.* at 19. An entrapment instruction is required if the evidence, viewed in this charitable fashion, "furnishes an arguable

4

basis for application of the proposed rule of law." *Rodriguez*, 814 F.2d at 814 (quoting *United States v. Coady*, 809 F.2d 119, 121 (1st Cir. 1987)). In other words, the record must contain evidence that makes the entrapment theory "plausible" or "superficially reasonable." *United States v. Gamache,* 156 F.3d 1, 9 (1st Cir. 1998)). The First Circuit has emphasized, "[t]his is not a very high standard to meet." *Id.*

## IV.  DISCUSSION

At this point, Mr. Moultrie has not shown there is at least some evidence of improper governmental inducement and lack of predisposition required to raise an entrapment defense.

### A.  Improper Inducement

The Defendant has not produced the requisite evidence of improper government inducement. "To demonstrate inducement, a defendant must show not only that the government provided the Defendant with the opportunity to commit the crime, but also the existence of a 'plus' factor that raises concerns of 'government overreaching.'" *United States v. Vasco*, 564 F.3d 12, 18 (1st Cir. 2009) (quoting *United States v. Gendron,* 18 F.3d 955, 961-62 (1st Cir. 1994)). Overreaching is indication "through such conduct as intimidation, threats, dogged insistence, excessive pressure or exploitation of a noncriminal motive." *Id.*

Based on the Government's submission, such governmental overreaching does not appear to be present in this case. As the Government recitation of the circumstances of the three controlled purchased by the UC demonstrates, *see Gov't's Mot.* at 2-13, "[n]either the CI nor the UC used any intimidation, issued any threats, engaged in 'dogged insistence,' or inappropriately attempted to elicit sympathy from

5

Defendant." *Id.* at 16.  More to the point, it is the Defendant's burden to produce some evidence of improper inducement—not the Government's.

In his opposition, the Defendant suggests that the CI may prove to have "peddled" "falsehoods."  *Def.'s Opp'n* at 2.  Even if this is true, the Defendant's "burden, though modest . . . requires more than self-serving assertions." *United States v. Shinderman*, 515 F.3d 5, 14 (1st Cir. 2008).  The Defendant must provide "some hard evidence" of inducement. *Rodriguez*, 858 F.2d at 815.  As the Government points out, the CI's "criminal history has no bearing on whether there was inducement brought to bear on *Defendant* or whether *Defendant lacked* a predisposition to commit the criminal acts that were committed in this case." *Gov't's Mot.* at 3.  Nor has the Defendant shown "that any improper inducement was then leveled at Defendant himself—a necessary step in a third-party entrapment defense." *Id.* at 3.

### B. Lack of Predisposition

Because the Defendant has not provided any evidence of inducement, the Court need not determine whether the Defendant has provided evidence of his lack of predisposition to the charged crime.  Nonetheless, the Court briefly considers the issue.

The Court considers the following factors when assessing whether a defendant was predisposed to commit the charged crime:

> (1) the character or reputation of the defendant; (2) whether the initial suggestion of criminal activity was made by the Government; (3) whether the defendant was engaged in the criminal activity for profit; (4) whether the defendant showed reluctance to commit the offense,

> which was overcome by the governmental persuasion and (5) the nature of the inducement or persuasion offered by the Government.

*Gamache,* 156 F.3d at 9-10. The Government points out that all but one of the factors clearly favor finding that the Defendant lacks predisposition. *Gov't's Mot.* at 19-23. Based on the evidence now before it, the Court agrees with the Government.

First, the character and reputation of the Defendant suggests that he had prior serious drug involvement. *Id.* at 19-20. Second, the Government "concedes that it approached Defendant to engage in a drug transaction" yet the Defendant "created the conditions which caused the Government to approach him." *Id.* at 20-21. While this is the factor that is strongest for the Government, the Court finds that the Defendant has not shown any evidence or argument on the matter. Third, the Defendant's own statements suggest that he was engaged in the drug sales for profit, stated he did not want to ruin his "investment." *Id.* at 21. Fourth, the Defendant has not demonstrated he showed any reluctance to commit the offense. While the Defendant at times postponed his meeting time with the UC, the Court did not identify any express reluctance to execute the drug sales. *Id.* at 22. Fifth, the Court agrees with the Government that there was "nothing untoward regarding the inducement provided to Defendant to commit the charged offenses" because "[t]his was, in all respects, a run-of-the-mill drug sting using a CI and a UC" and "[t]here were no promises of incredible returns on investment, nor were there any threats made for refusing to participate." *Id.*

### C. A Premature Ruling

The problem with issuing a definitive in limine ruling pretrial is that the Court cannot know what evidence will be adduced at trial, and "[o]nce the defendant meets his burden of production, entrapment becomes a question of fact for the jury." *Pérez-Rodríguez*, 13 F.4th at 19. The First Circuit explained that "[a] defendant does not need to introduce his own evidence to meet this burden." *Id.* (citing *Rodriguez*, 858 F.2d at 813). A defendant may rely on "evidence adduced during the government's case" or "any probative material in the record." *Id.* (quoting *Rodriguez*, 858 F.2d at 813). The proof may be "circumstantial rather than direct." *Id.* (quoting *Rodriguez*, 858 F.2d at 813). If there are factual disputes in the record, the court is not permitted to "weigh the evidence, make credibility determinations, or resolve conflicts in the proof." *Id.* (quoting *Gamache,* 156 F.3d at 9). If the parties argue competing inferences, the court must draw all reasonable inferences in favor of the defendant's entrapment theory. *Id.* Ultimately, if "a reasonable jury could view the evidence as establishing that defendant was entrapped . . . [the defendant] [i]s entitled to an entrapment instruction." *United States v. Teleguez*, 492 F.3d 80, 84 (1st Cir. 2007). "Determining whether government conduct has crossed the line into improper inducement or whether a person was predisposed to commit an offense are delicate questions of fact for the jury to sort out." *Pérez-Rodríguez*, 13 F.4th at 19 (citing *United States v. Acosta*, 67 F.3d 334, 338 (1st Cir. 1995)). In *Pérez-Rodríguez*, the First Circuit stressed that "a judge should not hesitate to send the question to the jury if there is even ambiguous evidence of entrapment." *Id.*

Even though other trial courts have ruled on the availability of entrapment defenses before trial, to do so in this case seems ill-advised. In this order, the Court has summarized the current state of the law on entrapment in the First Circuit, which may assist counsel for the Government and for Mr. Moultrie, but the Court declines to rule definitively pretrial and will await the evidence presented at trial to determine whether the entrapment defense may be raised.

## V. CONCLUSION

The Court DISMISSES without prejudice Government's Motion *in Limine* Regarding Potential Entrapment Defense (ECF No. 106).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 9th day of March, 2026